UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22CR00303-SEP |
| | ) |
| SEDDRICK L. ORR, | ) |
| | ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Seddrick L. Orr, represented by defense counsel Melissa K. Goymerac, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count I (bank fraud) of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relating to the defendant's fraudulently obtaining a Paycheck Protection Program loan, of which the Government is aware at this time.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, the United States and the defendant will jointly request that the Court sentence the defendant to a term of probation.

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds obtained as a result of the defendant's offense of bank fraud.

## 3. ELEMENTS:

The defendant admits to knowingly violating Title 18, United States Code, Section 1344(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly executed a scheme to obtain any of the moneys owned by, or under the custody and control of, a financial institution, by means of material false or fraudulent pretenses, representations, or promises;

*Two*, the financial institution was ~~insured by the Federal Deposit Insurance Corporation.~~ a mortgage lending business under 18 USC § 20. [handwritten initials]

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning no later than in or about April 2021, and continuing through at least in or about May 2021, in the Eastern District of Missouri, the defendant Seddrick L. Orr ("Orr") devised and participated in a scheme to obtain moneys, funds, credits, assets, securities, and other property

2

owned by and under the custody and control of Benworth Capital, a financial institution within the meaning of Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, and promises.

More specifically, Orr engaged in a scheme to fraudulently obtain a Paycheck Protection Program ("PPP") loan. The PPP was a program created by the Coronavirus, Aid, Relief, and Economic Security ("CARES") Act to provide forgivable loans to small businesses for job retention and certain other expenses. The types of small businesses eligible for a PPP loan included individuals who operated as a sole proprietorship and did not have any employees. Such individuals were eligible to receive a maximum PPP loan of up to $20,833 to cover lost compensation or income from the sole proprietorship. To obtain a PPP loan, a qualifying individual submitted a PPP loan application to a financial institution or participating lender and was required to certify, among other things, the annual income and expenditures for the sole proprietorship, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year. The amount of PPP loan for which a qualifying individual was eligible was based on these certifications. Applicants also had to certify that PPP loan proceeds were to be used for eligible expenses, namely payroll.

As part of the scheme, on or about April 22, 2021, Orr submitted a fraudulent PPP loan application as a sole proprietorship to Benworth Capital, with the intent to obtain PPP loan proceeds from Benworth Capital. On the PPP loan application, Orr knowingly misrepresented his gross income, for the purpose of inflating the amount of PPP loan that Orr could receive. Specifically, Orr falsely represented that his gross income in 2019, as reported on IRS Form 1040, Schedule C, was $97,750. In support of this misrepresentation, Orr submitted with his PPP loan

application a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), that purported to have been filed by Orr in 2019 and reported $97,750 in gross income that year. Orr falsified this IRS Form 1040, Schedule C and never filed the form with the IRS. When submitting his PPP loan application, Orr knew that he did not make $97,750 in gross income in 2019 and that, in fact, he made less than $20,000 that year. Orr chose $97,750 for his fabricated gross income after researching on the Internet what figure to use in order to maximize the PPP loan amount he would receive.

In addition, Orr falsely represented on the PPP loan application that the loan was for a landscaping business that was in operation as of February 15, 2020. Orr knew that he did not have an operating landscaping business as of that date, and, in fact, Orr only registered his landscaping business, Fresh Cutz Lawn, with the State of Missouri on February 13, 2021, a couple of months before Orr submitted his PPP loan application.

Based on the fraudulent misrepresentations in the PPP loan application, Orr caused Benworth Capital to approve the application and to disburse, on or about May 6, 2021, approximately $20,364 into his Neighbors Credit Union account #xxxxxx3237, representing the proceeds of his fraud. Beginning the next day, between May 7 and May 10, 2021, Orr withdrew $18,000 of the proceeds in cash across six separate transactions, for the purpose of spending the PPP loan proceeds on unauthorized expenses. Orr withdrew the loan proceeds in multiple transactions in order to avoid suspicion and to conceal the fact that the funds were the proceeds of fraud. Orr did not spend the PPP loan proceeds on payroll or other authorized expenses and instead spent the funds on various personal expenses, including paying his utility bills, mobile phone plan, and personal loan payments.

4

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Counts I is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

(1) **Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

(2) **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 4 levels should be added pursuant to Section 2B1.1(b)(1)(C), because the loss exceeds $15,000, but does not exceed $40,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(12), because the offense involved conduct described in 18 U.S.C. § 1040.

### b. Chapter 3 Adjustments:

(1) **Acceptance of Responsibility:** The parties agree that 2 levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance

5

of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

  c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 11.

  d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

  e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

  a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences the defendant to the parties' joint recommendation of probation. Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. <u>**OTHER**</u>:

    a. <u>**Disclosures Required by the United States Probation Office**</u>: The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    b. <u>**Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies**</u>: Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    c. <u>**Supervised Release**</u>: Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

    d. <u>**Mandatory Special Assessment**</u>: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount

9

of $20,364. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the

proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

11

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

11/6/23
Date

JONATHAN A. CLOW
Assistant United States Attorney

11/6/23
Date

SEDDRICK L. ORR
Defendant

12

Case: 4:22-cr-00303-SEP   Doc. #:  51   Filed: 11/06/23   Page: 13 of 13 PageID #: 113

11/6/23
Date

_____
MELISSA K. GOYMERAC
Attorney for Defendant

13